Filed 9/25/23  Decker v. Postmates CA1/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| BARBARA DECKER, Plaintiff and Respondent, v. POSTMATES, INC., Defendant and Appellant. | A165358 (San Francisco County Super. Ct. No. CGC-20-586984) |

Barbara Decker filed a lawsuit against Postmates, Inc. under the Private Attorney General Act (PAGA).  Postmates moved to compel arbitration and stay the case.  The trial court denied the motion to compel, but granted the stay, and Postmates appealed.  Since the appeal was filed, the United States Supreme Court has held that PAGA claims based on code violations personally suffered by the plaintiff must be ordered to arbitration. And the California Supreme Court has held that PAGA claims based on code violations suffered by employees other than the plaintiff cannot be, and can proceed in court.  In short, both issues that existed as of the time this appeal was filed have been resolved, in cases binding here.  The only remaining issue is as to the stay, in regard to which we remand the matter to the trial

1

court to revisit the issue in light of the new cases and the passage of time since it made its ruling.

## BACKGROUND

### The General Setting

Postmates, LLC, formally known as Postmates, Inc. (Postmates), is an online delivery service, operating an online and mobile platform connecting consumers with local merchants such as restaurants and grocery stores and, if requested by a consumer, local couriers who deliver food and other items from those merchants. When a consumer places an order through Postmates's platform, he or she could decide whether to pick up an order in person or have it delivered. And if the consumer chose delivery, nearby couriers would receive a notification through the Postmates's platform and choose whether to accept the consumer's offer to pick up and complete the delivery.

Anyone could sign up to be a courier, but they could not use the Postmates platform to make deliveries without accepting the terms of Postmates's Fleet Agreement. The Fleet Agreement is a 15-page document that Postmates's brief describes in some detail, including how it is presented to the courier, his or her options, how it is accepted, and various of the provisions in it. We see no need to go into such detail here, as the issues typically found in arbitration cases—issues, for example, such as the validity of the agreement, unconscionability, delegation, or whether the FAA applies—are not present here, where the issue is straightforward.

To set the scene therefore, we quote this succinct paragraph from Decker's respondent's brief: "The Fleet Agreement contains an arbitration provision providing that 'Postmates and [couriers] mutually agree that any and all disputes or claims between the Parties will be resolved in individual

2

arbitration.' [Citation.] The arbitration provision also includes a representative action waiver purporting to waive any 'claims brought under and state's Private Attorney General Act (PAGA)[.]' [Citation.] Lastly, the arbitration provision also contains a severability clause which provides in relevant part, '[i]n the event any portion of this Mutual Arbitration Provision is deemed unenforceable, the remainder of this Mutual Provision will be enforceable. Ms. Decker accepted the Fleet Agreement in order to begin making deliveries on the Postmates platform."

**The Proceedings Below**

In September 2020, Decker filed a complaint, followed shortly by an amended complaint, against Postmates, alleging that she and other couriers were misclassified as independent contractors. She sought penalties for alleged violations of the Labor Code, including unpaid wages, overtime compensation, skipped meal breaks, and wage statement violations.

Decker's lawsuit was based on PAGA, which authorizes any "aggrieved employee" to initiate a civil action against a former employer "on behalf of himself or herself and other current or former employees" to recover civil penalties for violations of the Labor Code ordinarily "assessed and collected by the Labor and Workforce Development Agency . . . ." (Lab. Code, § 2699, subd. (a).) As our Supreme Court has described, "An employee suing under PAGA 'does so as the proxy or agent of the state's labor law enforcement agencies.' [Citation.] . . . Moreover, the civil penalties a PAGA plaintiff may recover on the state's behalf are distinct from the statutory damages or penalties that may be available to employees suing for individual violations. [Citation.] Relief under PAGA is designed primarily to benefit the general public, not the party bringing the action. [Citations.] 'A PAGA representative action is therefore a type of qui tam action,' conforming to all

3

'traditional criteria, except that a portion of the penalty goes not only to the citizen bringing the suit but to all employees affected by the Labor Code violation.' [Citation.] The 'government entity on whose behalf the plaintiff files suit is always the real party in interest.' " (*Kim v. Reins International California, Inc.* (2020) 9 Cal.5th 73, 81, italics omitted.)

In January 2021, Postmates moved to compel arbitration and for a stay.

In May 2021, Decker filed an ex parte application for an order dismissing her class claims, and on June 30, the trial court filed an order dismissing those claims. And in light of the pending class action settlement in the *Postmates Classification Cases* (J.C.P. No. 5068) No. CJC-20-005068, pending before the San Francisco Superior Court, Postmates's motion was taken off calendar.

Following months of continuances, on February 25, 2022, Decker filed her opposition to Postmates's motion. The opposition memorandum was brief indeed, 12 pages total, and as alluded to above did not assert defenses or positions typically found in arbitration cases. Rather, Decker's opposition relied primarily on *Iskanian v. CLS Transportation Los Angeles, LLC* (2014) 59 Cal.4th 348 (*Iskanian*), where the California Supreme Court held "an arbitration agreement requiring an employee as a condition of employment to give up the right to bring representative PAGA actions in any forum is contrary to public policy." (*Iskanian, supra*, 59 Cal.4th at p. 360.) *Iskanian* further held that the FAA does not preempt a rule against such waivers, stating: "[A] PAGA claim lies outside the FAA's coverage because it is not a dispute between an employer and an employee arising out of their contractual relationship. It is a dispute between an employer and the state, which alleges directly or through its agents—either the [Labor and Workforce

4

Development] Agency or aggrieved employees—that the employer has violated the Labor Code." (*Iskanian*, at pp. 386–387.)

Postmates filed a reply, and the motion came on for hearing on March 22. That same day, the trial court filed its order denying the motion to the extent it sought to compel arbitration. Noting that Decker "pleads solely a representative PAGA action," and "does not allege any individual claims," the court held that "[t]he waiver of representative PAGA claims in an arbitration provision—claims that are on behalf of the State of California—is unenforceable and the Court of Appeal has held that the U.S. Supreme Court has yet to abrogate that rule." Thus, the court concluded, there was "nothing to arbitrate."

Although the trial court denied the motion to compel arbitration, the court granted the motion to stay pending overlapping arbitrations, based on Code of Civil Procedure section 1281.4 (Section 1281.4).[1] The court held that section applied because the "employee/independent contractor misclassification dispute is an issue in this case and that issue is presently being arbitrated in several different venues."

On May 18, Postmates filed a notice of appeal.

---

[1] Which section provides: "If a court of competent jurisdiction, whether in this State or not, has ordered arbitration of a controversy which is an issue involved in an action or proceeding pending before a court of this State, the court in which such action or proceeding is pending shall, upon motion of a party to such action or proceeding, stay the action or proceeding until an arbitration is had in accordance with the order to arbitrate or until such earlier time as the court specifies. [¶] . . . [¶] If the issue which is the controversy subject to arbitration is severable, the stay may be with respect to that issue only."

5

A month later, specifically June 15, the United States Supreme Court filed its opinion in *Viking River Cruises, Inc. v. Moriana* (2022) 142 S.Ct. 1906 (*Viking River*).

### *Viking River*

The *Viking River* court began its analysis by explaining PAGA claims are "representative" in two ways. (*Viking River*, *supra*, 596 U.S. at p. ___ [142 S.Ct. at p. 1916].) First, "PAGA actions are 'representative' in that they are brought by employees acting as representatives—that is, as agents or proxies—of the State." (*Viking River*, at p. ___ [142 S.Ct. at p. 1916].) In that sense, " ' "*every* PAGA action is . . . representative" ' and '[t]here is no individual component to a PAGA action,' [citations], because every PAGA claim is asserted in a representative capacity." (*Viking River*, at p. ___ [142 S.Ct. at p. 1916].) Second, some PAGA actions are "representative" in that they are brought by one employee to recover civil penalties for Labor Code violations committed against other employees. (*Viking River*, at p. ___ [142 S.Ct. at p. 1916].)[2]

As another preliminary matter, the Supreme Court, in a footnote,

---

[2] As explained in *Galarsa v. Dolgen California, LLC* (2023) 88 Cal.App.5th 639, 647–653, review granted May 3, 2023, S279021 (*Galarsa*): "The United States Supreme Court stated it would endeavor to be clear in its use of the term 'representative' and would use the phrase ' "individual PAGA claim" to refer to claims based on code violations suffered by the plaintiff.' [(*Viking River*, *supra*, 596 U.S. at p. ___ [142 S.Ct. at p. 1916].)] In addition, the court used the term 'non-individual claims' without explicitly defining it (*id.* at p. ___ [142 S.Ct. at pp. 1924, 1925]), but the opinion readily implies such claims are representative claims pursued by the plaintiff and based on Labor Code violations suffered by employees other than the plaintiff." Here, we will refer to PAGA claims based on code violations personally suffered by a plaintiff as "individual" claims, and PAGA claims based on code violations suffered by employees other than the plaintiff as "non-individual" claims.

6

rejected *Iskanian*'s holding that the FAA does not apply to PAGA claims. (*Viking River, supra*, 596 U.S. at p. ___, fn. 4 [142 S.Ct. at p. 1919, fn. 4], quoting *Iskanian, supra*, 59 Cal.4th at p. 387.)  Specifically, it rejected *Iskanian*'s reasoning "that a PAGA action lies outside the FAA's coverage entirely because § 2 is limited to controversies 'arising out of' the contract between the parties [citation], and a PAGA action 'is not a dispute between an employer and an employee arising out of their contractual relationship,' but 'a dispute between an employer and the state.'  [Citation.]"  (*Viking River*, at p. ___, fn. 4 [142 S.Ct. at  p. 1919, fn. 4], quoting *Iskanian*, at p. 387.) *Viking River* concluded that "disputes resolved in PAGA actions satisfy this requirement," because "[t]he contractual relationship between the parties is a but-for cause of any justiciable legal controversy between the parties under PAGA, and 'arising out of' language normally refers to a causal relationship. [Citation.]" (*Viking River*, at p. ___, fn. 4 [142 S.Ct. at p. 1919, fn. 4].) Moreover, "nothing in the FAA categorically exempts claims belonging to sovereigns from the scope of § 2." (*Viking River*, at p. ___, fn. 4 [142 S.Ct. at p. 1919, fn. 4].)

Given its conclusion that the FAA applied, the Supreme Court went on to consider whether the FAA preempts two of *Iskanian*'s rules, which it described this way:  "*Iskanian*'s principal rule prohibits waivers of 'representative' PAGA claims in the first sense.  That is, it prevents parties from waiving *representative standing* to bring PAGA claims in a judicial or arbitral forum.  But *Iskanian* also adopted a secondary rule that invalidates agreements to separately arbitrate or litigate 'individual PAGA claims for Labor Code violations that an employee suffered,' on the theory that resolving victim-specific claims in separate arbitrations does not serve the deterrent purpose of PAGA."  (*Viking River, supra*, 596 U.S. at p. ___

7

[142 S.Ct. at pp. 1916–1917].)

The *Viking River* court determined the FAA does not preempt *Iskanian*'s principal rule. (*Viking River, supra*, 596 U.S. at pp. ___–___, ___–___ [142 S.Ct. at pp. 1922–1923, 1924–1925]), reasoning that because the FAA is concerned with the forum in which disputes are resolved, not with the substantive law that resolves them, it did *not* preempt this rule. (*Id.* at p. ___ [142 S.Ct. at p. 1919].) Thus, even after *Viking River*, a contractual waiver of the right to prosecute PAGA claims is unenforceable as against California public policy.

However, the *Viking River* court held the FAA preempts *Iskanian*'s secondary rule "preclud[ing] [the] division of PAGA actions into individual and non-individual claims through an agreement to arbitrate." (*Viking River, supra*, 596 U.S. at p. ___ [142 S.Ct. at p. 1924].) If splitting were allowed, the court reasoned, parties might prefer to resolve higher-stakes nonindividual claims in court, where appellate review is available to correct errors, but to arbitrate lower-stakes individual claims. (*Ibid.*) But *Iskanian*'s prohibition on contractual splitting of PAGA claims "circumscribes the freedom of parties to determine 'the issues subject to arbitration' and 'the rules by which they will arbitrate' " by imposing on them an all-or-nothing choice: arbitrate both individual and non-individual claims or forego arbitration entirely. (*Viking River*, at p. ___ [142 S.Ct. at p. 1923].)

The Supreme Court then turned to the agreement at issue there, which required "arbitrat[ion] [of] any dispute arising out of [the plaintiff's] employment" and contained a waiver provision "providing that in any arbitral proceeding, the parties could not bring any dispute as a class, collective, or representative PAGA action. . . ." (*Viking River, supra*, 596 U.S. at p. ___ [142 S.Ct. at p. 1916].) The agreement also included a "severability

8

clause" specifying that "if any 'portion' of the waiver remained valid, it would be 'enforced in arbitration.' " (*Ibid.*) The court relied on that clause in concluding the defendant was entitled to compel arbitration of the plaintiff's individual claim, even though the arbitration agreement was invalid as to the representative claim. (*Id.* at p. ___ [142 S.Ct. p. 1925].)

Having concluded that the individual PAGA claim should be compelled to arbitration, the Supreme Court noted "[t]he remaining question is what the lower courts should have done with [the plaintiff's] non-individual claims." (*Viking River*, *supra*, 142 S.Ct. at p. 1925.) And, a majority held, once a plaintiff's individual PAGA claim is compelled to arbitration, any remaining representative PAGA claim asserted on behalf of other allegedly aggrieved employees should be dismissed.

**The Joint Motion to Stay**

On October 6, 2022, the parties filed in this court a joint motion to stay the appeal (Joint Motion). Noting the holding in *Viking River*, the joint motion stated, "it is undisputed that Decker's individual PAGA claims must be compelled to arbitration." (Joint Motion at pp. 5, 11.) But the joint motion went on, "Decker . . . nonetheless retains standing under PAGA to pursue the representative PAGA claims in court" (Joint Motion at p. 5), adding this: "Since *Viking River*, plaintiffs in California have disputed whether a plaintiff lacks standing to pursue the non-individual PAGA claims after the individual claims are compelled to arbitration. On July 20, 2022, the California Supreme Court granted review in *Adolph v. Uber Technologies, Inc.* (No. S274671), and will decide the question '[w]hether an aggrieved employee who has been compelled to arbitrate claims under [PAGA] . . . maintains statutory standing to pursue "PAGA claims arising out of events involving other employees" . . . in court or in any other forum the parties agree is suitable.'

9

[Citation.]"

The joint motion then had its "Argument," which began with this paragraph: "The central dispute in this appeal is whether Decker may litigate any portion of her PAGA claims in court. Under *Viking River*, there is no question that Decker's individual PAGA claims must be compelled to individual arbitration pursuant to the Federal Arbitration Act and the parties' individual arbitration agreement. The dispute, then, is whether Decker's remaining non-individual PAGA claims must be dismissed (as *Viking River* held) or may proceed in court (as Decker maintains) once the individual PAGA claims are sent to arbitration. Because the California Supreme Court will decide this question in *Adolph*, the parties request that the Court stay this appeal in the interest of judicial efficiency and to conserve party and judicial resources."

We denied the stay, and the parties filed their briefs, the last of which, Postmates's reply, was filed on July 3, 2023. Two weeks later, the California Supreme Court decided *Adolph v. Uber Technologies, Inc.* (2023) 14 Cal.5th 1104(*Adolph*).

### *Adolph*

By way of brief background, after *Viking River* at least five published California Court of Appeal decisions squarely addressed the issue of whether a plaintiff continues to have standing under PAGA to litigate non-individual claims after the individual claims are compelled to arbitration. And all five reached the same conclusion: dismissal for lack of standing is not required by California law. (*Piplack v. In-N-Out Burgers* (2023) 88 Cal.App.5th 1281, 1292, review granted June 14, 2023, S279546; *Gregg v. Uber Technologies, Inc.* (2023) 89 Cal.App.5th 786, 805–806, review granted June 14, 2023, S279722 (*Gregg*); *Seifu v. Lyft, Inc.* (2023) 89 Cal.App.5th 1129,

10

1139–1141, review granted June 14, 2023, S279932; *Nickson v. Shemran, Inc.* (2023) 90 Cal.App.5th 121, 134–135; *Galarsa, supra*, 88 Cal.App.5th at pp. 652–653, review granted May 3, 2023, S279021.)

The California Supreme Court took up the issue in *Adolph*, and, citing with approval the five unanimous decisions of the Courts of Appeal, concluded that "[w]here a plaintiff has brought a PAGA action comprising individual and non-individual claims, an order compelling arbitration of the individual claims does not strip the plaintiff of standing as an aggrieved employee to litigate claims on behalf of other employees under PAGA." (*Adolph, supra*, 14 Cal.5th at p. 1114; see *id.* at pp. 1121–1123.)

Given the timing of *Adolph*, we requested supplemental briefing on it as well as the issue of the stay ordered by the trial court. We received that briefing and heard oral argument.

Applying *Adolph* here, as we must, we conclude that Decker may pursue the non-individual claims in court.

That leaves the one remaining issue—the stay.

**The Stay**

Postmates argues in its opening brief and supplemental brief that Decker's non-individual PAGA claims should be stayed pending individual arbitration, specifically, that we should direct the trial court to modify its order staying the case to extend the stay pending arbitration of Decker's individual claims. Postmates argues that section 1281.4 requires a stay if a court has ordered arbitration of a controversy involving overlapping issues, and asserts, "Here, the trial court faithfully applied section 1281.4 and stayed Decker's PAGA action in light of several other pending arbitrations raising materially identical misclassification-based claims. [Citation.] The court noted that the 'employee/independent contractor misclassification dispute' at

11

issue in Decker's action 'is presently being arbitrated in several different venues,' and '[g]iven that overlap, a stay is warranted." And Postmates's supplemental brief asserts that *Adolph* "strongly suggests" that the non-individual claims should be stayed.

Decker, on the other hand, argues that we should remand the case back to the trial court "for a determination of whether the case should be stayed at the court's discretion in the interests of judicial efficiency—but not because the court is *required* to do so under section 1281.4." Decker asserts that section 1281.4 does not require a stay if a controversy in arbitration brought by another claimant only *shares* an issue of fact or law with a court action, which, she claims, is the situation here. Decker also contends that under *Viking River* the individual claims in arbitration and non-individual claims in court are separate—the former stemming from injury to Decker, the latter from injuries to other employees.

Finally, Decker's supplemental brief—referring to "the recently pending arbitrations" cited to by the trial court in its order—represents that "those arbitrations—consolidated as Postmates Classification Cases, Case No. CJC-20-005086 (San Francisco Superior Court)—settled last year. Because these arbitrations are settled, there is no overlapping issue in any pending arbitrations."

*Adolph* recognized that a "trial court may exercise its discretion to stay the non-individual claims pending the outcome of the arbitration pursuant to section 1281.4 of the Code of Civil Procedure." And given the change in the legal landscape and the passage of time since the trial court issued its order, we remand the matter to the trial court.

## DISPOSITION

The order denying Postmates's motion to compel arbitration is reversed, and the matter is remanded to the trial court to enter a new order and conduct further proceedings consistent with this opinion. The parties are to bear their own costs on appeal.

_____

Richman, J.

We concur:

_____

Stewart, P.J.

_____

Miller, J.

*Decker v. Postmates, Inc.* (A165358)